UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **SONNY BRANCH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: 3:21-cv-433 |
| | ) |
| **R.W. HARPER & SON, INC.** | ) |
| | ) |
| **Defendant.** | ) |

**COMPLAINT**

Comes now the plaintiff, Sonny Branch ("Mr. Branch"), by counsel, pursuant to Rule 8 of the Federal Rules of Civil Procedure, and states as follows for his Complaint against the defendant, R.W. Harper & Son, Inc. ("RWHS").

**JURISDICTION AND VENUE**

1. Federal jurisdiction for bringing actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., is proper pursuant to 28 U.S.C. § 1331, as this Court has original jurisdiction for all civil actions arising under the laws of the United States.

2. This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367(a).

3. Mr. Branch exhausted his administrative remedies with respect to each and every claim set forth in this Complaint by filing a discrimination charge with the Virginia Division of Human Rights and the Equal Employment Opportunity Commission identifying RWHS and generally describing the actions alleged in this Complaint. The EEOC issued Mr. Branch a Notice of Rights with respect to this charge and Mr. Branch now files this Complaint within 90 days of receiving the Notice.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), and Local Rule 3(B)(4) because a substantial part of the events or omissions giving rise to this claim occurred in this District and within the Richmond Division.

## PARTIES

5. Mr. Branch was an "employee" of RWHS within the meaning of Title VII of the Civil Rights Act of 1964 as set forth in 42 U.S.C. § 2000e.

6. RWHS was Mr. Branch's "employer" within the meaning of Title VII of the Civil Rights Act of 1964 as set forth in 42 U.S.C. § 2000e.

## FACTS

7. Mr. Branch began working for RWHS as a foreman in 2016.

8. RWHS, for all relevant times, had at least 15 employees.

9. Mr. Branch is a black male. He is a member of a protected class.

10. Around late May and early June of 2020, as protests raged around the country in response to the death of George Floyd, Mr. Branch and his coworkers began to notice an environment of racial hostility developing at RWHS.

11. Specifically, Mr. Branch witnessed an increase in the use of racial slurs in the work environment.

12. Three of the other black employees, comprising all or nearly all of the black employees at RWHS at that time, reported to Mr. Branch that they had been called racial slurs or been subjected to racial stereotyping. For example, black employees reported to Mr. Branch that they had been called slurs such as "nigger," "spook," and "boy."

13. At least one employee recalled hearing a white foreman state that "niggers aint worth hiring," referring to the black employees working at RWHS.

14. Mr. Branch addressed the concerns of the black employees with his superiors at RWHS.

15. Mr. Branch's superiors did not give Mr. Branch any assurances that racism in the workplace would be addressed, nor did they punish any employee for using racial slurs at work.

16. Prior to Mr. Branch complaining to his superiors about the growing racial hostility at the workplace, he had never received any notice that he performed his job in an unsatisfactory manner.

17. On June 18, 2020, one of Mr. Branch's white coworkers physically attacked Mr. Branch.

18. Upon information and belief, this attack was motivated directly by Mr. Branch making complaints about racial hostility to his superiors.

19. Immediately proceeding the attack, the coworker shouted, "this nigger makes more money than me." He then punched Mr. Branch in the head without warning, causing Mr. Branch to suffer a significant injury.

20. The attack occurred on video and one of Mr. Branch's black coworkers reported to the superiors at RWHS that the attacker had used a racial slur during the attack.

21. RWHS did not terminate the employment of the employee who attacked Mr. Branch, despite the attack being overtly racially motivated.

22. Due to the attack on Mr. Branch, at least three black employees refused to return to RWHS because they believed that the workplace was unsafe for black employees.

23. Mr. Branch also never returned to work for RWHS following the attack.

24. The attack upon Mr. Branch, and RWHS's failure to terminate the attacking employee, created intolerable working conditions, which no reasonable person would be expected to endure.

25. Additionally, Mr. Branch is aware that RWHS discriminated against his coworkers on a regular basis. Specifically, Mr. Branch is aware that his black coworkers were given less hours compared to white coworkers, that black employees were sent home during rainy days (not paid) while white workers were allowed to stay, and that black employees were not given access to RWHS's equipment yard, despite almost every white employee having a key.

26. Because of the racially motivated attack, along with the discrimination experienced by his black coworkers, and his superiors' apparent unwillingness to address the consistent use of racial slurs in the work environment, Mr. Branch felt that RWHS had fostered a racially hostile work environment and that he could not return.

27. Upon information and belief, the attack upon Mr. Branch and the other racial discrimination described above led to the departure of all or substantially all of the black employees working for RWHS at the time of the attack.

## COUNT I
### Discrimination on the Basis of Race in Violation of Title VII

28. Plaintiff incorporates the preceding paragraphs as if set for completely herein.

29. Mr. Branch is a member of a protected class.

30. Mr. Branch performed his job for RWHS in a satisfactory manner.

31. Mr. Branch was subject to an adverse employment action, including a physical attack by a coworker and constructive termination, as a result of his race.

32. Mr. Branch was subjected to different treatment by RWHS compared to his white coworkers.

33. The discrimination against Mr. Branch and other black coworkers, coupled with RWHS's failure to adequately address racial hostility in the workplace or punish the employee that attacked Mr. Branch, resulted in Mr. Branch's constructive termination.

## COUNT II
### Racially Hostile Work Environment in Violation of Title VII

34. Plaintiff incorporates the preceding paragraphs as if set for completely herein.

35. RWHS subjected Mr. Branch to unwelcome conduct by allowing white employees to use racial slurs against him and his black coworkers in the work environment.

36. The unwelcome conduct to which Mr. Branch and his coworkers were subjected was based on their race.

37. The unwelcome conduct was pervasive in that multiple black coworkers complained to Mr. Branch about the use of racial slurs in the workplace.

38. Mr. Branch attempted to address the racial hostility in the workplace with his superiors at RWHS but found that no solution would be offered.

39. RWHS did not take reasonable steps to prevent or promptly correct racist behavior among its white employees.

40. The unwelcome conduct culminated in a severe racially motivated physical attack against Mr. Branch that left him with a significant injury.

41. The racially hostile environment created and maintained by RWHS was sufficient to cause a reasonable person in Mr. Branch's position to leave the employment, thus constituting a constructive termination on the basis of race.

## COUNT III
### Discrimination on the Basis of Race in Violation of the Virginia Human Rights Act and Virginia Values Act

42. Plaintiff incorporates the preceding paragraphs as if set for completely herein.

43. Virginia Code § 2.2-3902 states that any conduct that violates federal law governing discrimination on the basis of race also constitutes an unlawful discriminatory practice under Virginia law.

44. Mr. Branch alleges violations of federal law pursuant to Title VII. Accordingly, he has also alleged violations of Virginia law.

WHEREFORE, based upon the foregoing, Plaintiff demands judgment against the defendant, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), for compensatory damages, as well as punitive damages pursuant to Virginia law in the amount of THREE-HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00), together with costs incurred in the pursuit of just resolution of this matter, prejudgment and post-judgment interest, and attorneys' fees, as well as any such further and additional relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,

/s/
Seth R. Carroll (VSB No. 74745)
Connor Bleakley (VSB No. 92113)
Commonwealth Law Group, LLC
3311 West Broad Street
Richmond, VA 23230
Phone/Fax: (804) 201-4969
cbleakley@hurtinva.com